We have counsel for Mr. Ondiek on video. Mr. Gonzalez, can you hear us? Yes, I can, Your Honor. I'm just curious why you're appearing on video when you're in Portland. My wife's job is a little less flexible and I had to drop the kids off this morning. Understood. All right. Counsel for petitioner, please proceed. Thank you, Your Honors. And may it please the Court, Jonathan Gonzalez, on behalf of the petitioner, I'd like to reserve two minutes for rebuttal. I'll keep an eye on the clock. All right. Thank you, Counselor. Petitioner respectfully requests the Court to remand this case because the immigration judge erred in finding that Ms. Ondiek failed to meet her burden of establishing credibility and the Board of Immigration Appeals erred in affirming the judge's error, which this Court reviews under the Substantial Evidence Standard. The Court should overturn the factual determination by the Board and the judge because the record compels the contrary conclusion that Ms. Ondiek was credible under the standard set forth in INS v. Elias Zacharias. Both the immigration judge and the Board of Immigration Appeals erred in finding that Ms. Ondiek was not credible because they did not properly analyze the totality of the circumstances and all relevant factors of her case as set forth in ALAM v. Garland. There are three main misinterpretations that led to this error. Immigration judge erred in finding Ms. Ondiek was not credible. First, when the judge did not properly weigh the ineffective assistance Ms. Ondiek received from her non-attorney advisor. Second, when the judge mistakenly analogized Kenya's political landscape with that of the United States. And third, when the judge was confused on the dates of the timeline of Ms. Ondiek's assault and misattributed his confusion to her credibility. First, the immigration judge erred in finding Ms. Ondiek was not credible because he did not properly weigh the ineffective assistance she received. Second, Ms. Ondiek admittedly made misinterpretations to USCIS at her asylum interview. She didn't make a misinterpretation, Mr. Gonzalez. She didn't make a misinterpretation. She said that she had had no aid in filling out her asylum application. That's not a misinterpretation. That's a statement of fact. Judge Bea, I agree that she made that statement, but she did so under the instruction of her advisor, Mr. Eugene Zin, who she thought was an attorney. When Mr. Zin refused to attend Ms. Ondiek's asylum interview Is your position that an alien can lie if the attorney tells her to lie and not lose credibility? Is that the idea? That's not the idea, Your Honor. Again, Ms. Ondiek stated in her affidavit that she was put in this position by the advisor, instructed to lie, likely to hide his unauthorized practice of law, so he impaired her choice to tell the truth. So if an attorney tells a witness to lie, the witness is not really lying because the attorney told them to? No, Your Honor. Just that she had choices to make and she was getting bad advice. She had choices to make. She could have told the truth or she could lie. And she hired someone she thought was an attorney who she thought knew the law in the United States, who advised her to do something. And then once she had competent counsel and effective counsel, we explained that this unscrupulous person held himself out as an attorney, provided ineffective assistance to her. Had a licensed attorney given her this advice and abandoned her for the interview, petitioner probably would have had three more pieces of evidence to add to the court, a malpractice judgment, a bar complaint, and official disciplinary action from the licensing state's bar. So with this evidence, the judge likely would have disregarded her prior misrepresentations under ineffective assistance of counsel. And she shouldn't be held to a higher standard because she was swindled by a non-attorney instead of by an ineffective attorney. Well, if it had been an attorney, then she would have had to have done a motion to reopen or something based on ineffective assistance of counsel with matter of lazado being met. And then we'd have to look at whether there's prejudice. So we don't know what would have happened if it had been a licensed attorney. We have those cases regularly, and it's a different analytical path. But generally, I don't think we would say that the ALJ, that substantial evidence, does not support a credibility determination where there is a proven falsehood. Your Honor, again, because this was not an attorney, there was less evidence in the record than there would have been had there been an attorney just ineffectively assisting her. So it put us in a tough position when this person was practicing unauthorized practice of law, advising her to do these things. And this is one of the three factors I'd like to get to regarding the evidence that should overturn the credibility finding. So secondly, the immigration judge also erred when he mistakenly analogized Kenya's political landscape with that of the United States. The judge found Ms. Ondiak was not credible in part because she could not clearly describe the ODM political policies and its platform. But the traditional platforms present in the United States  do impart to its history. In 2007, around the time Ms. Ondiak started in politics, there were 160 registered political parties in Kenya. Kenya then passed several Political Parties Act starting in December 2008 to consolidate parties. Still, as of May 2022, there were 90 registered political parties in Kenya per the Office of the Registrar of Political Parties in Kenya. This is the political environment in which Ms. Ondiak was participating in 2017. It was error by the immigration judge to assume that Kenya's political system operates so similarly to the United States as to be able to summarize her party's platform in the same way a U.S. citizen may recite major positions taken by Democrats and Republicans. If Democrats and Republicans were splintered into 45 registered political parties on each side, an average U.S. political activist may also have trouble explaining their party's political platform. Counsel, she's seeking asylum based on the fact that she was a leader in one of the parties. So are you saying that one would not expect a leader in the party to be able to espouse some of the views of the party? I'm saying, Your Honor, that she may not have been able to articulate it as specifically as a U.S. citizen might in our two-party system where there's black and white lines in terms of, you know, this party stands for this on abortion, this other party stands for this on abortion, and there are clear lines drawn. When there's 45 political parties on each side, it's more difficult to articulate it in the same way. I understand, but you're analogizing her to a U.S. citizen, not someone who's a leader. If someone is a leader of a party as opposed to a citizen who's nonpolitical, that argument is more persuasive, but someone who espouses themselves as a leader and is seeking asylum based on that leadership, couldn't the IJ expect for her to know some of the, you know, the political views of the organization of which she's a leader,  Yes, Your Honor. And I believe the judge, the immigration judge, can hold her to that standard, but I believe the immigration judge was holding her to a standard, a higher standard than that by asking her to articulate it similar to the way we would here in the United States. And then third, we believe the immigration judge erred because he was confused on the dates of the timeline in this case and misattributed his own confusion to another reason to doubt Ms. Ondiak's credibility. Ms. Ondiak testified to and provided corroborating evidence of an assault she suffered on October 27th, 2017 at a meeting she chaired to prepare for her party leader's return to Kenya. In his order, but never in open court, the judge mistakenly stated that Mr. Odinga, the party leader, returned on October 17th, 2017, then questioned if the meeting on October 27th really ever took place because the purpose of the meeting didn't make sense to the judge 10 days after the event they were supposedly preparing for. The judge stated Ms. Ondiak, quote, continued to claim, quote, the wrong meeting date to support his finding of a lack of credibility. The certified administrative record shows Mr. Odinga, in fact, returned on November 17th, 2017, which fits Ms. Ondiak's timeline, not the immigration judge's. The judge put a lot of weight in his decision on this inconsistency that he noted was not discussed during removal proceedings. An immigration judge must give the applicant an opportunity to explain a non-obvious inconsistency before relying on it to make an adverse credibility finding, as stated in Soto Olarte v. Holder. This was not even a non-obvious inconsistency, but rather a mistake, a clear error by the judge. The judge did not give Ms. Ondiak any opportunity to address this. The judge erred in questioning Ms. Ondiak's credibility on this point as well. Therefore, taking in the totality of the circumstances, Ms. Ondiak was credible. The judge erred in finding Ms. Ondiak was not credible in three ways. Again, first, when he did not properly weigh the ineffective assistance Ms. Ondiak received from her non-attorney advisor. Second, when he mistakenly analogized Kenya's political landscape with that of the United States. And third, when he was confused on the dates of the timeline of Ms. Ondiak's assault and misattributed his confusion to her credibility. The Board of Immigration Appeals also erred in affirming the judge's error, and Ms. Ondiak was harmed by this error because both the immigration judge and the attorney for Department of Homeland Security agreed that if she were credible, she would qualify for asylum and convention against torture as demonstrated in the certified administrative record pages 165 to 66. The record does not support an adverse credibility finding by the IJ or the BIA. In fact, these circumstances are so extraordinary with ineffective assistance and immigration judge errors that they justify overturning the IJ's adverse credibility determination as stated in Jabril V. Gonzalez. The court should find that the record compels a contrary decision on credibility of the standard in Elias Zacharias. Counsel, you were talking about the IJ was confused about some dates. What was the adverse credibility determination that was affected by the IJ's confusion on dates? Yeah, there was a meeting where she was assaulted on October 27, 2017. The meeting's purpose was to prepare for her party leader's return to Kenya on November 17, 2017. The judge mistakenly said, but the party leader came back in October, October 17 of 2017, 10 days before this meeting. And so she kept, you know, did this meeting ever really happen on the 27th? He was already back. He wasn't already back. He arrived November. But the BIA did not rely on that. And so we only reviewed the adverse credibility determinations that were relied on by the BIA. And specifically, the BIA, page 4, note 2 said it was not relying on or discussing any other adverse credibility determination. So that one is not even in play for purposes of this petition. Yeah, it was heavily relied on by the IJ, and the BIA dismissed it because it was a clear error by the IJ, and they felt they didn't want to fight that issue. Yeah, so the BIA didn't rely on it. So we don't have to address that here. Okay. Yes, Your Honor. So petitioner respectfully requests this court reverse the decision on credibility and remand to the Board of Immigration Appeals with instructions to remand to the immigration judge to reconsider Ms. Ondiak's application for asylum and convention against torture. Alternatively, petitioner requests this court to remand the case to reconsider the issue of credibility in light of petitioner's foregoing claims of error committed by the board and the immigration judge. All right. Thank you, counsel. We'll hear from the government. May it please the court, my name is Jennifer Singer, and I represent the United States Attorney General, a respondent in this matter. Your Honor, the question before this court is whether petitioner presented a credible claim for asylum, and the answer to that question is no. And just to reiterate what this court was talking about a few moments ago, petitioner made much of the fact about the IJ's confusion about dates and how he used that as a reason to discredit petitioner's testimony. But again, as this court noted, the board did not rely on that, and that ground that the IJ stated on the dates is not before this court. The court only relies on the two grounds that the board relied on, and those are supported by substantial evidence. And petitioner does not dispute that she gave inconsistent testimony about who prepared her asylum application, whether it was her or whether it was Zine, and she does not dispute that her answers to ODM's political platform were vague. What she's really saying is that the board should have accepted her explanations for that vagary and for that inconsistency, but her explanations were not persuasive and the board was not required to accept the explanations. You say it's an inconsistency. I thought it was a flat-out lie. So the IJ called it a lie and the board called it an inconsistency. I think the nuance in that is because if you take her statement to the asylum officer and credit her explanation that Zine told her to say that, then if you accept that Zine actually prepared the asylum application, then she is admitting to a lie before the asylum officer. But in these adverse credibility determinations, you don't know what to believe. So if you believe her initial statement to the asylum officer that it was just her who prepared the asylum application, then she's being dishonest now of the existence of Zine. So we don't know what to believe. But either way, either statement is an untruth, and that untruth is you can base an adverse credibility determination based upon either untruth. Petitioner makes much of that the board did not take into consideration this so-called IAC claim. But again, as this Court noted, if there really believes there was IAC, the proper vehicle for raising that is in a motion to reopen. And I think the IAC claim is a red herring here because it is, even if we assume and believe that there was a Mr. Zine and this Mr. Zine told Petitioner to lie, the case law in this circuit is clear that even if an attorney or a non-attorney tells someone to say an untruth and that person does it, that person is still choosing to tell an immigration authority a lie, and that is the choice, and they are held to account for that. And the only real exception to telling untruths to immigration authorities is when that untruth is a means for escaping persecution, and that is not the facts we have here. Turning to Petitioner's inability to give an explanation of ODM's political platform, Petitioner gives an explanation that it was unfair to expect her to know because the political systems in Kenya are greatly different from those in the United States. But again, as this Court alluded to, Petitioner's whole claim is that she was a leader in the ODM, that she was involved in the party since 2005, so over 10 years by the time the hearing took place, that she was a well-known figure in Kenya because of her political activism, that she recruited youth and educated them on the party, and that she was so committed to this cause that despite claims from her children and her husband that she should quit the party, and because she was even harmed and threatened by the party, that she's so committed to this cause that she still had to fight for the cause. But she could not give anything but a generalized explanation of what the party's platform is, what their objectives are, or anything. And I did an Internet search. The ODM and the NASA, which is the coalition that ODM was a part of, during the 2017 election, each had a six-point platform and a so-called manifesto that they spread throughout the country, and that's an easy—she could have at least remembered one of the six points of the platform, and she was unable to do so. And because, again, the case law in this Court says that if you are an active member in a political party and you claim persecution because of that active participation, you are expected to know the basic tenets of that political party. Just what did she say in answer to what the political party platform is? During testimony, she said that the ODM brings changes to Kenya. And then on cross-examination, she said that the ODM is a fit for her because she wants to fight for people's rights and that Kenya has a poor government and she wants something new. And then before the asylum officer and in her first asylum application, it seemed like she was kind of giving a campaign slogan kind of mantra, and it was something vague, like the noble cause. She couldn't identify anything specific of what the causes were or what they were fighting for. She did. I mean, she did know some basics, that it's aligned with the Luau tribe and that their leader is Odinga, but you would expect more from that, giving all her other testimony. How could you expect more, unless you were assuming some sort of civic education similar to what we used to get in civics in high school here? She opened the door to this. She claims that she's a leader, that she's well-known for her political advocacy, that she's so involved and committed to the cause that she's been threatened and her kids are begging her to leave the party and quit politics, but she couldn't name anything specific about their political objectives. She didn't say that they were aligned with the tribe. Right, but that doesn't explain anything. That just says maybe what the membership is. It doesn't explain what the political goals are that she's fighting for. She says she goes out and educates youth about the party's platform, but she still couldn't say anything about the party's platform. Well, I think the argument of the petitioner is that the tribal affiliation is in itself the point and that she could be an advocate on that basis alone and that it's an imposition of our own political values to say you need something more than that. Can you respond to that argument? Again, the case law says that if you are an active participant in a political party, there's an expectation that you have a deeper understanding of what the tenets of that political party is, and she didn't even give that response about what it means to be Luau and why her ethnicity, even if that's the membership, why she's committed to Odinga and why that's going to be helpful to her tribe or her ethnicity or why that they feel like they're slighted in Kenyan society. She couldn't explain anything to that effect about why it's meaningful or what exact cause she's fighting for. She doesn't say that her ethnicity is oppressed or that they have no rights or that they're fighting for anything. It was just very general and vague, and you would expect from someone who says she's a leader and has been doing it for ten plus years that she would have some basic explanation as to just a basic tenet, and she was not able to do that. And even if there isn't, even if one of you is persuaded, just because reasonable minds can disagree, the Court's not authorized to overturn the decision of the Board when there's just not substantial evidence to show that this was, that the Board was not required to accept the petitioner's explanation. You said that you did a search of the Internet and you found that the platform had six planks, right? Was that in the record? It was not in the record. Then why are we talking about it? I mean... Suppose she says, she said that the party was aligned with a tribe. Tribalism may be the party's platform. I don't know why that can't be accepted by an immigration officer. But she didn't even give that as a reason. But she says, she said her party was aligned with her tribe, right? That's correct. That may be the whole platform of the party. Then you would expect someone who's a leader of that party to have some, more of an explanation for that. She didn't provide anything. Fighting for justice and the Kenyan Isles. Again, I think someone who's a leader, who's so committed to the cause, who cannot explain a tenet of what she's fighting for. But even if this Court were to disagree with that, the lie that she said, either now or before, is sufficient to affirm the adverse credibility determination. So if the Court were not persuaded for that ground... Or the combination, or the combination of the two. Correct. We would have to be compelled to roll the other way in order for us to find in her favor. Correct. And if there's no more questions, I'll just rest on the briefs. All right, thank you, Counsel. Rebaul. Thank you, Your Honors. I'd like to point out that when we're talking about the misrepresentation or inconsistent testimony, we are talking about just the issue of who prepared the application. Again, she was instructed to hide Mr. Zien, possibly because of his unauthorized practice of law. There's no contention that the rest of the asylum application, the persecution she suffered, is a misrepresentation, inconsistent testimony. The only inconsistent testimony is that who prepared the application. And Mr. Zien had motive to hide because of his unauthorized practice of law. And then, as Judge Bea pointed out, the tribalism can be the platform. I mean, we see that here in the United States. There's no necessary tie between immigration and climate change and abortion. Yet, to stay with the tribe, oftentimes you stick with your party on all issues, even though a person themselves can have disparate beliefs within those issues. As tribalism can be the platform, the government said she did not provide anything. If she provided tribalism as the platform, then she has connections. Did she provide tribalism as the platform? She just said it's linked to her tribe. But did she say that tribalism was the platform? I don't believe she said those words exactly. No, Your Honor. And if the court has no further questions, I'd like to rest. All right, thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The final case on Calendar Vitoit v. Kroger has been submitted on the briefs. That completes our calendar for the morning and for the week. We are adjourned. All rise. The court for this session stands adjourned for the week. Thank you.
judges: RAWLINSON, BEA, SUNG